May it please the court, Sean Sitar on behalf of plaintiff and the appellant. The issues presented to the court, as phrased by our brief, seeks summary reversal of the trial court's ruling that a threshold issue should be decided by the arbitrator. Here, we believe that, and we ask that the Ninth Circuit render a ruling consistent with the Fifth, Sixth, and Tenth Circuits that have already ruled that contract formation issues should be decided by the court. Those rulings are well-grounded. They're consistent with U.S. Supreme Court rulings of Rent-A-Center and the Granite Rock rulings. If this court does not issue a ruling consistent with the other circuits, the next level of analysis is whether the arbitration agreement, in terms of the delegation clause, was clear and unmistakable. Isn't there a question as to whether or not there is a formation issue in this case? I mean, this is a very strange case, because Mr. Alstrom signed the agreement. And the question is whether, once he does that, what you have left is not a formation agreement, a problem. I mean, there's an agreement. We know there's an agreement, he signed it. Now, there's a provision that says he can opt out of the agreement. And, well, there may be a question as to whether he opted out, but I don't know why that's a formation question. Because we're characterizing that clause or that paragraph as a condition precedent for there to be an enforceable agreement. It's just callings. I don't understand, because this is an opt out. How is it a condition precedent? If he doesn't return the form, he agrees to arbitrate. What's the evidence on whether he returned the form? I understand that he didn't. Well, he did not return the form. So doesn't that signify his agreement to the arbitration? Well, no. The document, we as lawyers or judges are precluded from rewriting the agreement. To enforce the agreement would effectively be rewriting the agreement to take out the end. Honestly, it seems to me, and I don't know, the defendant doesn't seem to be saying this, but it appears to me that this provision, 11, doesn't apply to somebody who signed the agreement at all. It talks about deeming to have accepted the terms of this agreement. And it talks about 30 days from when they received the agreement. The date is provided to the employee. So it seems to me to be an alternative way. And it talks about deeming to have been accepted the terms. So I would read this as saying, if you don't sign this, but you don't opt out and continue to work, then you're gonna be deemed to have accepted, even if you don't sign it. But it doesn't seem to negate the fact that if you do sign it, you signed it. Well, what would have happened in terms of the analysis if plaintiff would have signed the opt-out form and he did not work? Well, I don't know. I mean, it sounds like the defendants think that he could have done that, that he could have signed it and then opted out. I don't read it that way, but I guess they do. And if they do, then maybe there's something in your argument. By the way, is the opt-out form in the record someplace? No, you have to request the opt-out form from the company. I know, but is it in the record? I do not believe so. Your Honor. So he signed the agreement to arbitrate, he didn't opt out, is that right? He did not send out the opt-out form. That's correct, Your Honor. So why isn't he deemed to have agreed to arbitrate? We need to honor the terms of the agreement. According to the plain and expressed terms of the agreement, he needed to send in the form and work for D.R. Horton. He never worked for D.R. Horton. He never worked a day in his life for D.R. Horton. He was eventually employed by DHI. So to enforce the agreement, we would have to agree with- This is what I don't understand. Well, did he sign- Except at the beginning, except as provided below, employee and the company both agree all legal disputes and claims between them, including those relating to his employment with the company already separate, any claims against the company's parents, et cetera. Okay, so they agreed to all of this. And signs it at the bottom, right? And a company representative signs it. And usually that would mean that he's agreed to it because he signed it. There's a provision about essentially deeming you to have accepted the terms, i.e. from other circumstances. But here, why didn't he just agree by signing it? That's where I keep ending up at a dead end. I understand that he could have not signed it and filed an opt-out form, but he did not sign it, he did sign. He signed it, but there's no dispute that he never worked for D.R. Horton. There's no dispute that D.R. Horton is defined as the company. It's not defined as D.R. Horton, DHI, parents, related entities, or other related companies. This was a finely crafted agreement by the company that was presented to our client, which essentially was ineffective. Isn't D.R. Horton the parent of DHIM? And so wouldn't that these claims against parents, subsidiaries, affiliates come within the arbitration agreement? No, because if you look at the language pertaining to this condition precedent, the language here references the company. The company, as we've demonstrated, is narrowly tailored in the arbitration agreement and it's identified as D.R. Horton. Later on, they say, well, if the agreement is effective and this is the condition precedent, this whole, this is the gatekeeper issue for the court to decide, if there is an agreement, then it will be effective for subsidiaries, agents, other entities that are related to D.R. Horton. Doesn't it say in paragraph one, employee and the company agree that all legal disputes and claims between them, et cetera, and claims by employee against companies, parents, subsidiaries, affiliates, or agents shall be determined exclusively by arbitration. So I don't understand your argument that this D.R. Horton argument, and I guess I don't understand, you keep saying something is a condition precedent. My local school professor would call it a condition precedent, but in your mind, what is a condition precedent? In my mind, a condition precedent is certain conduct and agreement to agree on certain conduct or acts need to occur for the contract to be effective. It means- Let me try this. You think that it's paragraph 11, that I guess from the perspective of D.H.I. or D.H.R. was poorly drafted, that what it should have said to result in the formation of the arbitration agreement, it should have said, and if employee accepts or continues employment with the company or its parents or affiliates or subsidiaries, but instead they narrowly define company in, they use the defined term company, which is defined as D.R. Horton, and your client never worked for D.R. Horton. Is that what you're saying? That they should have changed, to be drafted to bind your client. They should have put the continuous employment with the company or its parent or affiliates. Please say it's the other. Well, but in terms of what's a condition precedent, the Teamsters case is pretty informative. In Teamsters case, the agreement said in terms, as I understand it, it was signed, but it said this is not going to go into effect unless A, B and C. That's correct. It's an agreement to agree. So how does paragraph 11 say that? It talks about how they can opt out. And if he doesn't deliver it within 10 days, then he'll be deemed to have accepted, but nothing in it says that unless X, Y and Z happened, there's no agreement. It's a fatally flawed agreement that was presented. I want to know how this is parallel to what's in the Teamsters case. In the Teamsters case, they had an agreement to agree, which was never perfected, which is why the court had to make a determination as to whether- Right, and on the question of whether the court has to make the determination, if it's a formation question, I think you're right. Okay, if it's a formation question. So that's the question. Is it a formation question? I think this is very analogous to the Teamsters case. This is a formation question, just because the language that we're dealing with is embedded and related to a opt-out provision doesn't necessarily mean that it's not a formation clause or question that- The opt-out provision is just not relevant. I mean, you call it a condition preceding, but once he's signed, once your client signed the agreement, he started working for... He started working, right? He started- So what's the condition preceding? You talk about an agreement to agree. That's not the same thing as a condition preceding. So I am completely lost when it comes to your argument. He signed something. My way of thinking, that's, again, in contract formation, that's the Holy Grail. You sign an agreement. It's unconditional at that point. It doesn't require that he tender anything within a certain period, et cetera. He signs it, starts working, does not doubt. The rest of it, it's like, I could make arguments out of anything, in effect. So maybe I'm not being fair, but just tell me again what your best argument is that there's a flaw here. What's the best argument? The best argument is that they gave plaintiff a bad agreement, and we need to honor the agreement as written. Nobody can dispute. Yes, but that's a question of how it's written. So tell me why you think it's written the way you're saying it's written. It doesn't say, it doesn't say, unless you fail to give an opt-out, fail to, this agreement shall not go into effect unless you fail to give an opt-out, fail to file the opt-out form and work for G.R. Horton for 30, after 30 days. It doesn't say that. It says the opposite. It says, if you don't deliver it, and if you continue to work, then you shall be deemed to have accepted, but it doesn't say that's the only way you can be deemed to have accepted. You can accept it. I mean, the and and shall are the same words used. I'm sorry, what? The and and shall are the same operative words used in the Rothby-Garcia-Martez case. But it runs in the other direction. That's the problem. This is what happens if you don't do it. Now what happens if you do do it? This is an extremely poorly drafted arbitration agreement. And we would ask the court, I think the best argument is to construe any ambiguity against the company, and not enforce the arbitration agreement. I have nothing further. I'm ready. Thank you, counsel. Ms. Katz. May it please the court. Your honors, as you've indicated thus far, the issue here from our perspective is straightforward. A contract was formed, specifically an agreement to arbitrate all claims Mr. Ahlstrom might have against his employer arising out of his employment when he signed the mutual arbitration agreement as part of his onboarding process. DHIM put forth evidence in the district court that both parties signed the agreement on that date, including the agreement itself. Mr. Ahlstrom has not contested that he signed the agreement. He's not contended that he never saw or read it. He's not contended that he ever attempted to opt out. In fact, he put forth no- But your position, as I understand it, is that he could have opted out after he signed it. Yes. I don't really. And is that what the opt-out form says? We don't have the opt-out form. I mean, I would have thought not. I would have thought from reading this thing that you can either sign it or you can opt out. But even if you don't sign it, if you don't opt out and work for 30 days, you will be deemed to have agreed to it. So there are two ways you can agree to it. One is you can sign it. And the second is you can not, after you get the agreement, but don't sign it, you can, if you don't opt out and you work for 30 days, you're still going to be taken as if you signed it. But you're telling me that after you sign it, you can opt out. Your Honor, I think both statements are correct. I would absolutely agree with- Both statements can't be correct. No, both statements cannot be correct. Your position is that you can sign it and opt out by returning an opt-out form after you signed it. Correct. Or you could not sign it. So paragraph 12 of the agreement says that by signing the agreement, you are agreeing to resolve your disputes without the benefit of a judge or jury. Well, nothing in the agreement says by signing it, you're agreeing to it. That's, with all due respect, paragraph 12 says, by signing this agreement, employee acknowledges that he or she is knowingly and voluntarily waiving the right to file a lawsuit relating to employee's employment with the company, as well as the right to resolve disputes in a proceeding before a judge or jury. All right, so stop there. So that's paragraph 12. But under paragraph 11, the employee can still opt out, even though he agreed to that, paragraph 12. Under paragraph 11, he can opt out if he changes his mind. Correct. I don't think that's correct. I don't think it is correct. I don't think it is correct, but if it is, you can take that position all the way through. The DHS lawyer is arguing, that's what the brief's all about, that that's how this works. And if you're saying, oh, that can't be how it works, what you're saying is that this agreement is ambiguous because you're reading it one way and the company's lawyer's reading it another way, right? But I have one other question for you, Ms. Katz. And this is, here's what I think, fundamentally, is the problem. The client, Ostrom, never worked for D.R. Horton. So he didn't meet the requirement of accepting or continuing employment with D.R. Horton. And the term company is defined only as D.R. Horton. And so there's two things in order to opt out. He doesn't, no, in order to remain in. To remain in, he does not deliver the executive form within 30 days. And two, he accepts or continues employment with the company after that date, after the 30 days passes. But he's saying, well, I didn't work for H.R. Horton and they're defined as company in that paragraph 11. So there's two things that are a condition precedent to being deemed to have accepted the terms of the agreement. And this other thing, the second thing, continuing employment with D.H.R. or D.R.H., D.R. Horton. Was not satisfied. I think I have his argument down. And I want to know your response to that argument. Like how you define company in paragraph 11. Well, paragraph 11 is not determinative here. You didn't answer my question. You didn't answer my question, okay. The company is defined at the start of the agreement as D.R. Horton Inc. You are correct. Mr. Ahlstrom, I suppose the best way to read this, you're right, is that if he never worked for the company, he could not, if he never worked for the company as defined, he could not have validly opted out. Because he didn't ever try to validly opt out. No, it doesn't say that. It says that if you don't deliver it and continue, then you shall be deemed to have accepted. It doesn't talk about whether you're validly opting out. And in other words, it seems to me, once you accept that after he signed it, he could have opted out, then why doesn't that last sentence apply to him? And if it applies to him, i.e. he didn't deliver the form and he didn't work for the company during that period, he didn't deliver the form, but he also didn't continue employment, then why isn't he out as a conditioned president? And that's why I think you walk yourself into a losing position once he can opt out. Well, Your Honor, this is just quite simply not a conditioned precedent. This is- Can I just ask you a question? Just the plain reading of that paragraph 11 says it doesn't reference him signing it at all. It says by delivering within 30 days of the date of the agreement is provided to employee. It doesn't say signed, executed. It's just a provision that by on its face to me that the simplest plainest meaning is you give someone an employment contract. They don't sign it. They're deemed to work for you and be bound by it from 30 days from the date that it's provided. If they don't opt out. If they don't opt out. So I don't understand this sort of tortured reasoning that he can sign an agreement not withstanding the fact that he signs it that he can still opt out. And we sort of go down that path of ambiguity. I guess that part of it throws me for a loop. So was the opt out form attached to this agreement? No, it was not. And it's not in the record, is that correct? That's correct. And it's not in the record. That's correct. Can we go back to the clarifier? The record? Go ahead. I'm sorry. I'm sorry. Why isn't it in the record? I suppose the best answer I can give you is that he never submitted one. So we didn't put it in the record. Right. And did he ever work for D.R. Horton? No. Well, it seems to me that this leads us to the question of whether a formation question, which includes is it a condition precedent, is for the court or for an arbitrator. You've taken a rather tough position in saying that you can delegate a formation question to i.e. whether there's a contract at all to arbitrate, not just whether it's a valid contract or an enforceable contract or one at all. To an arbitrator. Is there any support for that position anywhere? Your Honor, I will concede that that's not our strongest argument. But based on the facts of this case, that's not our strongest argument sort of in the abstract. But based on the facts of this case, this is not a traditional formation question as you all recognized here today. And for example, this is not the situation where you have in the federal versus United Healthcare case where the plaintiff claimed that she never saw or agreed to any aspect of the policy. So that was a formation question that inherently called into question whether she had agreed to the delegation provision at all. That's not what we have here. What we have here is a person's- It seems to me that we have an interpretation question as to what is necessary to enter into this agreement, which is a formation question. I.e., and again, once you agree that he could have opted out after he entered the agreement, you've walked yourself into that interpretation question, which is, does the last sentence apply to somebody who's already signed the agreement? And it's hard to see why not. So- Well, Your Honor- It seems to me that there is a formation question at that point. To the extent it is a formation question, the district court actually did decide that issue. The district court held specifically that a contract was formed when Mr. Ahlstrom signed on the dotted line. She held that with respect to D.R. Horton Inc., with respect to another affiliate of D.R. Horton that was- Yes, but that would be a legal issue, so we would have to decide then, right? In other words, if you're essentially conceding that you're wrong about the formation issue, which it seems to me we ought to at least say flatly that you can't delegate a formation issue. If you can't delegate a formation issue, then we have to decide the formation issue. And the fact that the district court decided it doesn't answer our question, it's a legal question, no? Yes. And your first sentence in your red brief is, he agreed to arbitrate his wage and hour claims against his employer, DHI, on an individualized basis He signed the mutual arbitration agreement, and he did not exercise his right pursuant to MAA to subsequently open up. However, the agreement to arbitrate was with D.H., with the other entity. Where is it? I'm sorry, it was with D.R. Horton, and not D.H.I. Mortgage. So he did not agree to arbitrate his claims with D.H.I. Mortgage. Well, he did not agree with D.H.I. Horton to litigate his claims. He may have agreed with the company that he did agree with to litigate claims with his actual employer, but he didn't agree with his actual employer. The agreement was not with his employer. And he didn't, we didn't continue to work with his actual employer for D.R. Horton, which is how this thing appears to be written. But again, we don't have to decide that if we decide there's a question as to formation, and we believe that questions of formation need to be decided by a court, which would mean that we would have to reverse the district court here. Your Honor, respectfully, the district court did decide that a contract was formed. So that would not have to be reversed. Can I just do an Occam's razor here for a second thing? And just, so when you read this, so, okay, the company is defined as D.R.H. Inc., a company that he didn't work for, but the sort of umbrella concept of arbitrability is, you know, we're supposed to interpret it broadly and blah, blah, blah. So then when you look at paragraph number one, it basically says, hey, there's all these affiliated, you know, companies, subsidiaries, et cetera. And, you know, you agree that any dispute between within that family is subject to arbitration. Isn't that just the end of the inquiry at this point? The other issue about opting out, you know, ambiguities, conditions preceding, I don't know. Maybe I'm oversimplifying. No, I would agree with your Honor. We think this is very straightforward. The contract, it's a straightforward mutual arbitration agreement between an employer and an employee. But what does the opt-out provision mean then? Your Honor, interpretation of the opt-out provision is something that is unquestionably left to the arbitrator pursuant to the delegation clause. What it means is the employee could opt out. This is an agreement that is used by DR Horton and all of its affiliates for all of its employees. But that's irrelevant.  written for all of DR Horton's affiliates. So, but what, you have to give meaning to every provision of the contract. I agree, Your Honor. What does the opt-out form mean? It says, if he does two things, if he doesn't, well, if he doesn't return the form and he continues to work for the company, company defined is DR Horton. That sentence then, Your Honor, wouldn't have applied to him. If he never worked for the company, the sentence wouldn't have been applied to him. However, the first sentence of that paragraph says, employee may opt out of this agreement by delivering within 30 days of the date of the agreement. And it doesn't say that, you see. It doesn't say within 30 days of the date of this agreement. It says within 30 days of the date this agreement is provided to the employee. Yes. Right, it doesn't say what you said, it said it also. I apologize. It said before that this is an agreement between an employer and an employee, but it's not that either. Because he didn't work for the company that entered into the agreement. So it wasn't an agreement with his employer. You're right, I misspoke then. I mean, I think the problem is we can't just, I mean, I don't mean to suggest. Maybe, sorry. Judge Perry said, I don't mean to suggest it's an oversimplification, but this is dialed an arbitration agreement. And I think you can't just look at paragraph one and then not give any meaning to paragraph 11. Likewise, Your Honor, I don't think you can just look at paragraph 11 and not give any meaning to paragraphs one through 10 and 12. The way Mr. Ahlstrom would have us read it, paragraph 11 exists to the exclusion of everything else. And that is not consistent with California law on contract interpretation. Let me ask you a question. Based on this argument today, is there any inkling in your mind that you might want to redefine the term company for this arbitration agreement for the future? Absolutely. If I had drafted this agreement, I would have drafted it differently, but that's the agreement that we have in front of us. You know, maybe the legal question is faced with an agreement where the employee signs an agreement that is not with his actual employee, her. Is it a valid binding, you know, valid arbitration agreement to begin with? Because the extension of that argument is that, you know, with all of the affiliates and parents and the sort of interlocking way business works these days, all of a sudden you are bound by an arbitration agreement with a company that you have only a marginal, you know, connection with. And maybe, maybe, you know, maybe the Occam's razor of my analogy is bad. And maybe the fact that, you know, that company is a defined term in paragraph 11 is something that can't be ignored. Maybe this agreement is just fatally vague. I would disagree with that respectfully, your honor. We think the agreement is straightforward. It's an agreement- But you also made the argument that contract formation, you know, is not for a district court. And that is flat out wrong. I think under the circumstances of this particular case, the issue, the way that the plaintiff has raised it here, calling it a contract formation does not make it an issue for the district court. It is an issue of interpretation. Under other circumstances, if plaintiff, as I said, plaintiff produced no evidence in this case. He did not contradict our evidence. He didn't object to our evidence. He, if he had said, I didn't sign this, or I didn't see it, we'd be talking about a different thing. That would be more of an obvious contract formation issue. To continue on Judge Fragerson's point, if you read this agreement in detail, and it doesn't make a whole lot of sense if he's not working for the company that is defined as the company, D.R. Horton. It says, for example, except as provided below, employee and the company voluntarily waive all rights to trial in court before a jury, et cetera, okay? But what about the non-company? He wasn't working for the company. It says it's supposed to, it says earlier that the agreement, that they are agreeing to arbitrate claims against non-company, but this waiver doesn't apply except to the company. And then later on, it says, notice to the company must be sent to the human resources official at the company's corporate office. And then it says, it says, arbitration shall be held in or near the city in which the employee is or was last employed by the company. Well, he wasn't employed by the company. So how does that provision apply? It seems that the whole setup here assumes that he was applied, he was working for the company. And it covers claims against other entities, but it doesn't cover, I think there's a good chance it just doesn't cover anybody who isn't employed by the company. Well, your honor, I respectfully disagree with that. The mutual- Well, I just read you a bunch of things that make no sense if he isn't employed by the company. The mutual intention of the parties here was to enter into agreement to arbitrate all claims by D.R. Horton Inc. against Mr. Ahlstrom or Mr. Ahlstrom against- Well, mutual intent of the parties is a conclusion that you're making. You couldn't answer that question fairly without a remand and a factual development, could you? Respectfully, your honor, Mr. Ahlstrom had the opportunity to put forth evidence already and he didn't. He had the chance to do that and he hasn't done that. What stage of the litigation was this in when you brought your motion to compel arbitration? It was essentially a motion to dismiss. So how did he have a chance to develop evidence? He could have submitted a response to our declarations in support of our motion. Well, he doesn't even have the opt-out form, which apparently no one has. Anyway, you're over your time and I'll give Mr. Sitar a minute. I think he was over his time, too. Thank you, your honor. I think generally, I think that was- Mr. Sitar, can you adjust your microphone? It's sort of gritty or static. You sound like Darth Vader. Maybe, maybe I can. Tell them, you sound weird. Is that better? Is that better now? Not really. Not bad. Do you have any earphones? I don't, I don't. Maybe. Sam, do you have any ideas? Yes, Judge, he can either call in with a phone or just try reconnecting really quick because Mike was working fine earlier. So a reconnection will probably fix it. Or maybe he can just, if he's using a cell phone, just take the speakerphone home. I dropped off my cell phone. But other than that, it's not possible. No, it's not the cell phone. It's your computer, Mike, that's disrupted. Why don't you just, do you have a number, Sam, that he can call, just call into this? He's only got a minute, so we can just- Yes, Judge. So the number is 1-669-254-3255. And then you'll need to enter the meeting ID and passcode. The meeting ID is 1-6-0-0-3-8-5-7-4-6. The passcode is 3-1-4-7-2-9. There we go.  Okay. Can everybody hear me now? Jessica, do you want to turn off your computer microphone? I have it on mute, but it's still, maybe I'll move it. I'm sorry. That's okay. Is this better now? Yes, yes. I believe that we've hashed out the pivotal issue and problem to enforce this arbitration agreement. Based upon the terms, the company is defined narrowly. The company is defined as D.R. Horton, not D.H.I. Also, as indicated in our brief, the company could have easily included the broad definition in paragraph one when it was defining what the company is and who would be bound with this agreement. So, I have nothing further, Your Honors. All right. Unless you have any questions. Does anyone have any further questions? I don't think so. So, Alstrom versus D.H.I. Mortgage Company will be submitted and this session of the calendar is adjourned for today. Thank you very much. Thank you very much, Your Honors. This court for this session stands adjourned.
judges: Wardlaw, Berzon, Pregerson